IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILTON THOMAS, SR., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PHILADELPHIA, et al., <br><br> Defendant. | CIVIL ACTION <br> NO. 15-3422 <br><br> FILED <br> AUG 2 1 2017 <br> KATE BARKMAN, Clerk <br> By_____Dep. Clerk |

OPINION

Slomsky, J.                                                                                          August 21, 2017

I.   INTRODUCTION

This case involves allegations that Defendants the City of Philadelphia and the School District of Philadelphia (collectively the "City" or "City Defendants") attempted to collect debts that had been discharged in Plaintiff Milton Thomas Sr.'s bankruptcy, in violation of the discharge injunction entered under 11 U.S.C. § 524.[1] The United States Court of Appeals for the

---

[1] Section 524(a) provides as follows:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case,

Third Circuit remanded this action to this Court with instruction to determine if the City had notice of the bankruptcy and what effect, if any, such notice has on the current Complaint.

The City has now filed a Motion for Judgment on the Pleadings in an attempt to strip the Court of jurisdiction to resolve this case. For reasons that follow, the Court will deny Defendants' Motion for Judgment on the Pleadings (Doc. No. 39), and will impose a sanction in the amount of $10,100 on Defendants for violating the discharge injunction, which will be awarded to Plaintiff.

## II.  BACKGROUND

In 2004, Thomas filed for bankruptcy under Chapter 13 of the Federal Bankruptcy Code. In the bankruptcy proceeding, Thomas filed proof of claims[2]—or debts—owed to the City for three properties he owned: 1618 S. 58th Street, 1620 S. 58th Street, and 1251 S. Ruby Street,[3] all in Philadelphia, Pennsylvania. These debts related to real estate taxes on the properties, which Thomas failed to pay.

---

on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a).

[2] A proof of claim is "a written statement setting forth a creditor's claim." Fed. R. Bank. P. 3001(a). The claim sets out the amount that is owed to the creditor as of the date of the bankruptcy filing and, if relevant, any priority status the creditor may have. Fed. R. Bank. P. 3001(c)-(d). "If a creditor does not timely file a proof of such creditor's claim, the debtor or trustee may file a proof of such claim." 11 U.S.C. § 501(c).

[3] The property located at 1251 S. Ruby Street is not at issue in this litigation.

A Chapter 13 bankruptcy enables an individual debtor to propose a repayment plan and make installments to his creditors over three to five years. Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015) (citing 11 U.S.C. §§ 1306(b), 1322, 1327(b)). Secured creditors who have notice of a bankruptcy may file a proof of claim to establish the debtor's obligation. 11 U.S.C. § 501(a). Secured creditors who fail to do so may face a "cramdown" of their secured claims.[4] Generally speaking, the debtor is entitled to a discharge once he completes the Chapter 13 plan, thereby obtaining his "fresh start."[5] Harris, 135 S. Ct. at 1835. The discharge releases the debtor from all debts provided for by the plan ("pre-petition debts"), with limited exceptions. 11 U.S.C. § 524. Creditors may no longer continue any collection action against the debtor to recoup discharged obligations.[6]

On August, 26, 2004, noting that there was "no answer or appearances by respondent," the Bankruptcy Court entered a cramdown order with respect to the debts on the properties at 1618 S. 58th Street and 1620 S. 58th Street. See In re Thomas, Bankr. E.D. Pa. 04-10175-elf, dkt. #54. After completing the Chapter 13 plan more than five years later, Thomas received a discharge. Id. at dkt. #129.

On June 13, 2015, Thomas initiated this action against the City alleging that it was attempting to collect debts that had been discharged in the earlier bankruptcy. (Doc. No. 3.)

---

[4] "The term 'Cram Down' refers to the process under § 1325(a)(5)(B)(i) whereby a chapter 13 plan may be confirmed without the consent of the secured creditors." First Fid. Bank v. McAteer, 985 F.2d 114, 116 n.1 (3d Cir. 1993).

[5] "As soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . ." 11 U.S.C. § 1328.

[6] "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

Specifically, Thomas claimed that the City was attempting to collect outstanding real estate taxes incurred from 1984 to 2004 on the 1618 S. 58th Street and 1620 S. 58th Street properties, which had been previously discharged in the bankruptcy. (Id. at 1-2.) Thomas sought an injunction prohibiting the sale of the two properties, as well as compensatory and punitive damages for Defendants' violation of the bankruptcy discharge. (Id. at 2.)

On February 3, 2016, Defendants moved to dismiss the Complaint on the grounds of res judicata, or claim preclusion. (Doc. No. 22.) They argued that although this "dispute concerns the real property located at 1618 S. 58th Street and 1620 S. 58th Street," an earlier action Thomas filed in United States Bankruptcy Court for the Eastern District of Pennsylvania involving the 1251 S. Ruby Street property should bar this instant case. (Doc. No. 13.) On July 7, 2016, in an Opinion and Order, this Court granted Defendants' Motion to Dismiss. (Doc. Nos. 28, 29.)

On March 16, 2017, the United States Court of Appeals for the Third Circuit decided that Thomas's claims were not barred by claim preclusion or issue preclusion,[7] and remanded the case. This Court was instructed to "decide anew, in the context of Thomas's current complaint, and after providing the parties with notice and an opportunity to be heard, whether the City had sufficient notice of Thomas's bankruptcy." Thomas v. City of Philadelphia, 624 F. App'x 174, 177-78 (3d Cir. 2017) (internal citations omitted). If this Court "determines that the City had notice of the 2004 bankruptcy, then it will decide what effect, if any, the discharge had on the matters in Thomas's current complaint." Id. at 178.

---

[7] On appeal, the City abandoned its earlier argument that claim preclusion applied to bar Thomas's claims, and instead asserted that issue preclusion should be used to preclude the claims. Thomas v. City of Philadelphia, 624 F. App'x 174, 176-77 (3d Cir. 2017). Both arguments were meritless. Id.

4

In accordance with the Third Circuit's decision, this Court scheduled a status conference with the parties. (Doc. No. 36.) On May 9, 2017, at the conference, the parties informed the Court of the current status of the two properties at issue in this case: 1618 S. 58th Street and 1620 S. 58th Street.

With respect to the property located at 1620 S. 58th Street, the City explained that the property was sold at sheriff's sale on July 15, 2015 for approximately $10,000. (Doc. No. 41 at 16:21-18:13.) The City admitted that the 1620 S. 58th Street property was sold on the basis that Thomas had not paid real estate taxes for the residence, including those pre-petition taxes incurred between 1983 and 2004. (Id. at 16:18-18:13.) Thomas stated that he suffered a significant loss from the sale of 1620 S. 58th Street. (Id. at 18:14-19:3.) For example, he noted that he was receiving $650 per month in rental income from this property before it was sold. (Id. at 18:18-20.) For the City's sale of the 1620 S. 58th Street property, Thomas requested damages including the appraisal value of the property at the time it was sold, the unearned rental income that he would have received on the property, and punitive damages to penalize the City for its conduct.[8] (See id. at 18:14-19:3.)

Turning to the property located at 1618 S. 58th Street, the City had stayed the collection action for unpaid real estate taxes and the pending sheriff's sale of the property. (Doc. No. 41 at 7:23-8:9.) The Court noted that the basis for Defendants' collection measures concerning the 1618 S. 58th Street property included unpaid real estate taxes Thomas incurred from 1983 through 2004, which had previously been discharged in the bankruptcy. (Id. at 7:23-8:23, 12:22-13:2.) Significantly, with respect to both properties, the City "admit[ted] that it had notice of the

---

[8] Thomas also requested that he be given "his landlord/tenant license back." (Doc. No. 41 at 26:1-2.) Thomas was referring to a "commercial activity license," which the City issues to residents who rent their properties. (Id. at 27:1-18.)

bankruptcy." (Id. at 9:12-13.) Defendants then pointed out that Thomas had not paid any real estate taxes on the property from 2005 through 2017 ("post-petition debts"), and argued that these outstanding liabilities could be the basis of a future sheriff sale on the property. (Id. at 8:20-23.) Thomas conceded that he had not paid real estate taxes on the property post-bankruptcy. (Id. at 13:3-15:4.) In terms of relief, Thomas requested that the Court order the City to vacate the pending sheriff's sale and to declare that he no longer owed real estate taxes from 1983 to 2004 on 1618 S. 58th Street. (Id. at 14:16-15:1.)

In addition, at the May 9, 2017 status conference, the City raised for the first time the argument that this Court lacked jurisdiction over this case. (Id. at 11:8-12:8.) The City subsequently briefed this issue and filed the Motion for Judgment on the Pleadings. (Doc. No. 39.)

At the conclusion of the status conference, the Court advised the parties that it may be in their best interest to reach a settlement since the City conceded that it had notice of the bankruptcy. (Doc. No. 41 at 25:1-19.) However, if they were unable to do so, the Court would schedule a second hearing at which the parties could present evidence "on what effect, if any, the discharge had on matters in Thomas's current complaint." (Id. at 31:7-12.)

The parties were unable to reach a settlement. On July 31, 2017, the Court held an evidentiary hearing to determine what effect the discharge had on matters in the Complaint. (Id.; Doc. No. 40.) At the second hearing, the parties stipulated that the City had notice of Thomas's bankruptcy. (Doc. No. 49 at 5:8-17.)

The parties then updated the Court of the status of both properties at issue. The City again admitted that the property located at 1620 S. 58th Street was sold at sheriff's sale for $10,100, partly to recover outstanding pre-petition taxes that had been discharged. (Id. at 16:23-

17:2.) Despite the fact that the City had notice of the bankruptcy and violated the discharge injunction, the City argued that Thomas should not be awarded any damages because it only collected $4,487.48 from the proceeds of the sale.[9] (Id. at 17:7-10.) Furthermore, Thomas owed post-petition real estate taxes on the property, which totaled $11,024.67. (Id. at 17:6-7.) Thus, the City argued that it did not profit from the sale. The City called Karena Baylock, an employee at the Law and Revenue Department of the City of Philadelphia, to testify about the City's tax records and the amount of real estate taxes owed for the properties at issue. Baylock confirmed the amount of real estate taxes owed on both properties.[10]

In terms of the 1618 S. 58th Street property, the City explained that the collection action and pending sheriff sale had been stayed. (Id. at 73:23-78:1.) Again, the City admitted that this collection action included pre-petition taxes. (Id.) However, the City asserted that Thomas owed approximately $26,151.16 in post-petition taxes. (Id. at 18:8-19.) Given the fact that Thomas owed post-petition taxes, the City argued that it was entitled to continue its collection and sale measures on the property. The Court, however, informed the City that continuing collection efforts that relied in part on pre-petition debts to which the City was not entitled was in direct violation of the discharge injunction. (Id. at 73:23-78:1.) Therefore, the Court advised the City that it could withdraw the collection action and pending sheriff sale of the 1618 S. 58th Street

---

[9] The remaining proceeds from the sheriff's sale went to associated costs, such as sheriff's costs, advertising expenses, deed recordation fees, and transfer taxes. (Doc. No. 49 at 30:18-31:9.)

[10] In addition, Baylock discussed overdue trash collection fees for each property. (Doc. No. 49 at 18:20-19:2, 25:6-26:19.)

property.[11] (Id.) Immediately following the hearing, the City filed a discontinuance in the collection case and pending sale of the 1618 S. 58th Street property. (Doc. No. 43.)

After providing the parties with notice and an opportunity to be heard at the status conference and the evidentiary hearing, the Court will now determine "what effect, if any, the discharge had on the matters in Thomas's current complaint." Thomas, 624 F. App'x at 178. It will also dispose of Defendants' Motion for Judgment on the Pleadings.

### III. STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions). Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986); see also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)). A motion for

---

[11] The Court explained that the City could file a new collection action or sheriff sale notice based solely on post-petition taxes. (Doc. No. 49 at 77:16-79:3.)

judgment on the pleadings will only be granted where "the plaintiffs would not be entitled to relief under any set of facts that could be proved." Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

IV. ANALYSIS

A. The Motion for Judgment on the Pleadings Will Be Denied Because This Court Has Jurisdiction Over This Case

Defendants contend that their Motion for Judgment on the Pleadings should be granted because the Court lacks subject matter jurisdiction over this case. (Doc. No. 39.) Defendants characterize the Complaint as alleging that "the City Defendants' actions violate the bankruptcy discharge injunction contained in Section 524 of the Bankruptcy Code (11 U.S.C. § 524(a))." (Id. at 1.) Defendants assert that "there is no private right of action for any alleged violation of the bankruptcy discharge injunction in Section 524(a) and thus, this Court lacks subject matter jurisdiction to hear this dispute." (Id.)

Section 524(a)[12] is a broad injunction which effectively bars creditors from collecting debts that have been discharged in bankruptcy. However, "in contrast to Section 362(h) which remedies violations of the automatic stay by mandating actual damages, see 11 U.S.C. § 362(h),[13] Section 524 is silent with respect to a private right of action for debtors injured by a

---

[12] See, supra, n.1.

[13] Section 362(h) states:

> (h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—
>
> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or

9

creditor's violation of the discharge injunction." In re Meyers, 344 B.R. 61, 64 (E.D. Pa. 2006). While the United States Court of Appeals for the Third Circuit has not addressed whether Section 524(a) implies a private right of action, it has observed that a few other circuits have found that it does not. In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) (citing Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507-10 (9th Cir. 2002); Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir. 2001); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 421-23 (6th Cir. 2000)).

"The absence of an express right of action under Section 524 if, in fact, no such right of action exists, does not mean that a violation of the discharge injunction cannot be remedied." Meyers, 344 B.R. at 64. In fact, where debtors have filed an adversary proceeding seeking relief under Section 524, some courts have treated such complaints as a request for civil contempt

---

retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C. § 362(h).

under 11 U.S.C. § 105.[14] See, e.g., In re Motichko, 395 B.R. 25 (Bankr. N.D. Ohio 2008); In the Matter of Fourth Quarter Properties 86, LLC, No. 15-10135, 2017 WL 432790 (Bankr. N.D. Ga. Jan. 31, 2017); In re Montano, 398 B.R. 47 (Bankr. D. N.M. 2008). Other courts, however, have refused to do so and require the debtor to file a motion for civil contempt in the main bankruptcy case. See, e.g., Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186 (9th Cir. 2011); In re Frambes, 454 B.R. 437 (Bankr. E.D. Ky. 2011); In re Whitaker, No. 13-5008, 2013 WL 2467932 (Bankr. E.D. Tenn. June 7, 2013).

In Motichko, the debtors brought an adversary proceeding alleging that the creditor had violated the discharge injunction. 395 B.R. at 28. Acknowledging that "[t]he traditional way to bring an action for contempt before the Court is by motion," the court nevertheless declined to dismiss the proceeding. Id. The court stated that to do so would "elevate form over substance," particularly because "an adversary proceeding provides more procedural protection for the defendant than does a contested matter brought by way of motion." Id. at 33. The court would not make the debtors engage in what was characterized as "unnecessary 'hoop jumping'" that "would merely serve to increase the costs of litigation, without providing any real benefit to either party." Id.

In contrast, in Barrientos, the debtor initiated an adversary proceeding containing "a single cause of action for contempt in violation of § 524." 633 F.3d at 1187. The United States

---

[14] 11 U.S.C. § 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Court of Appeals for the Ninth Circuit required that the contempt proceeding for violation of the discharge injunction be initiated by motion in the bankruptcy case, not in a separate adversary proceeding. Id.

While the Court appreciates the bright-line nature of the rule applied in Barrientos, the approach taken in Motichko is more appropriate. The approach in Motichko affords a court discretion to resolve a matter using the most appropriate procedure. See In the Matter of Fourth Quarter Properties 86, LLC, No. 15-10135, 2017 WL 432790, *3 (Bankr. N.D. Ga. Jan. 31, 2017) ("An approach focused on ensuring due process and preventing prejudice guarantees that no party is unduly harmed by the choice of procedural vehicle."). Such an approach is most appropriate here, where Defendants do not necessarily raise an issue with the content of the Complaint, but with its form. Although Defendants contend that the Complaint should be dismissed and Thomas should be forced to re-file a motion for civil contempt in the main bankruptcy case, such procedural "hoop jumping" is not appropriate at this stage in the litigation. In re Motichko, 395 B.R. at 28.

Defendants have had multiple opportunities to argue that the Court does not have jurisdiction, yet raised it only after the Third Circuit remanded this action for this Court to "decide anew, in the context of Thomas's current complaint, and after providing the parties with notice and an opportunity to be heard, whether the City had sufficient notice of Thomas's bankruptcy." Thomas, 624 F. App'x at 177-78. Defendants have admitted that they had notice of the bankruptcy. Rather than have this Court determine next what effect such notice has on the current Complaint, Defendants request that the Complaint be dismissed, only to have Thomas, who is proceeding pro se, file a motion in the main bankruptcy case. This procedural path does not appear at all to be what the Third Circuit instructed this Court to do on remand.

Thomas has endured years of battling with Defendants over its collection actions on his properties. Since obtaining the Chapter 13 discharge, he has argued that Defendants were unjustly violating the discharge injunction. In fact, while correctly contesting Defendants' collection practices because of the discharge injunction, the City sold his property at 1620 S. 58th Street.

In light of the Third Circuit's instructions and the drawn out history of this litigation, it would be inappropriate to dismiss the Complaint at this stage, only to place the burden on Thomas to file a motion for civil contempt in the underlying bankruptcy case. Such an approach would not promote judicial economy. Rather, it would force the parties to re-litigate issues heard by this Court and would substantially delay any resolution of this matter.

Therefore, this Court concludes that it has subject matter jurisdiction over this case.[15] Because a court may exercise its civil contempt power under 11 U.S.C. § 105(a) to remedy violations of a discharge injunction, it will treat the Complaint and Plaintiff's requests made at the hearing as his request for civil contempt. Having determined the approach to take in resolving the dispute, the Court turns to whether a finding of civil contempt is warranted. As such, Defendants' Motion for Judgment on the Pleadings will be denied.

### B. Civil Contempt for Violation of the 11 U.S.C. § 524 Discharge Injunction

A court may impose civil contempt sanctions where there is clear and convincing evidence that: "(1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order." In re Meyers, 344 B.R. 61, 65 (Bankr. E.D. Pa. 2006) (citing Robin v. Woods, 28 F.3d 396, 399 (3d Cir. 1994)).

---

[15] This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a), which provides in relevant part: "the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).

13

First, to make a showing of contempt a plaintiff must demonstrate that a valid order of the court existed. Id. "A valid order is one whose terms are specific and definite." In re Close, No. ADV 03-0153, 2003 WL 22697825, at *10 (Bankr. E.D. Pa. Oct. 29, 2003). On September 3, 2009, the Bankruptcy Court entered a discharge order, which is the pertinent order in this case. In re Thomas, Bankr. E.D. Pa. 04-10175-elf, dkt. #129. The discharge order explicitly states that it discharges all debts not specifically exempted and that it operates as an injunction against collection. Id. It provides:

### Collection of Discharged Debts Prohibited

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [*In a case involving community property*: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor. However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

Id. The first requirement is satisfied here because the Bankruptcy Court entered an order discharging Thomas's debts provided for in his Chapter 13 plan, which operates as an injunction against the collection of the debtor's discharged debts. Id.

Second, a plaintiff must show that the defendant had knowledge of the order. See Robin, 28 F.3d at 399. The defendant's knowledge of the order "must be sufficient to put it on notice of the proscribed conduct." In re Lands End Leasing, Inc., 220 B.R. 226, 234 (Bankr. D.N.J. 1998). Moreover, "knowledge of an order will be imputed to a party who had opportunity to know of it, but chose not the gain that knowledge." See Close, 2003 WL 22697825, at *10 (concluding that the creditor had constructive knowledge of the discharge order where the creditor's attorney had

14

notice of the discharge and the creditor had the opportunity to learn of the order through his counsel's representation); see also Yoppolo v. Walter (In re Walter), 265 B.R. 753, 759-60 (Bankr. N.D. Ohio 2001) (finding that the debtor wife was deemed to have knowledge of an order received by her husband where she had the opportunity to learn of the order, but instead left such matters to her husband).

Here, Defendants admitted on multiple occasions to receiving notice of Thomas's bankruptcy. (Doc. No. 41 at 9:12-13, Doc. No. 49 at 5:8-17.) For example, at the status conference, counsel admitted that Defendants "had notice of the bankruptcy." (Doc. No. 41 at 9:12-13.) Additionally, at the evidentiary hearing, counsel again conceded that Defendants had notice. (Doc. No. 49 at 5:8-21.) Defendants were on notice of the bankruptcy, and had an opportunity to not only contest the discharge of the pre-petition taxes, but also had an opportunity to learn of the Chapter 13 discharge order and injunction against collection of pre-petition debts. Thus, this Court concludes that Defendants had knowledge of the discharge order.

Third, to prove civil contempt, a plaintiff is required to show that the defendant disobeyed the order. Meyers, 344 B.R. at 65. Here, Defendants violated the discharge in several ways. Defendants admitted that they did not stop collection efforts on pre-petition taxes, despite receiving notice of the bankruptcy. (See, e.g., Doc. No. 49 at 73:23-78:1.) For example, Defendants continued in their collection action against Thomas in the hope of forcing a sheriff sale of the property located at 1618 S. 58th Street, even though the action relied partly on pre-petition debts. (Id.) Although at this point the collection action involving the prohibited debts has been withdrawn, for a significant period of time Defendants pursued this action in violation of the discharge injunction of the Bankruptcy Court. Moreover and most egregiously, Defendants sold Thomas's property at 1620 S. 58th Street partly on the basis that he owed pre-

petition real estate taxes that had been discharged. (Id. at 16:23-17:2.) These actions are two clear violations of the discharge injunction.

Thus, Thomas has proven all three elements of civil contempt. The Court will now address the request for sanctions or damages for Defendants' violation of the discharge injunction.

### C. A Sanction Will Be Imposed on Defendants

A court may impose various types of sanctions in response to civil contempt, such as costs, compensatory damages, and attorneys' fees. In re Brown, 481 B.R. 351, 363 (Bankr. E.D. Pa. 2012). Sanctions are used to coerce the disobedient party into compliance with the court's order or to compensate for losses sustained by the disobedience. Meyers, 344 B.R. at 66.

Here, Thomas has requested "compensatory, exemplary, and treble damages [a]nd any other relief that this court deems appropriate." (Doc. No. 3 at 2.)

Concerning the property at 1620 S. 58th Street, Thomas requested damages including the appraised value of the property at the time it was sold, the unearned rental income that he would have collected on the property, and punitive damages to penalize the City for its conduct. (See id. at 18:14-19:3.) Although Thomas speculated that the appraised value of the property was about $86,000, this appraisal does not guarantee that the property would be sold at or near this price. (See Doc. No. 46 at 13.) In fact, a property which is not free and clear of post-petition encumbrances may sell for substantially less than its appraisal value. The evidentiary record here shows that the 1620 S. 58th Street property was sold at sheriff's sale for $10,100. (Doc. No. 49 at 30:12-23; Doc. No. 48 at 9.) Thomas, therefore, is entitled to the full sale price of the property, that is, $10,100.[16] Although Thomas also requests unearned rental payments and

---

[16] Defendants argue that any sanctions imposed should be off-set by the amount of post-petition taxes Thomas owed on the 1620 S. 58th Street property. However, this contention ignores the

punitive damages, the Court cannot impose these sanctions. Thomas did not provide evidence to confirm his claim for rental payments on this property. Additionally, the Court cannot impose punitive damages on Defendants.[17] In conclusion, Thomas is entitled to receive $10,100 from Defendants from the sale of the property located at 1620 S. 58th Street executed in violation of the discharge injunction. A sanction in this amount will be imposed on Defendants, which will be awarded to Plaintiff.

Regarding the property at 1618 S. 58th Street, Thomas requested that the Court order the City to vacate the pending sheriff's sale and to declare that Plaintiff no longer owes real estate taxes from 1983 to 2004 on 1618 S. 58th Street.[18] (Doc. No. 41 at 14:16-15:1.) After the evidentiary hearing, Defendants filed a discontinuance of the collection action and the pending sheriff sale of the 1618 S. 58th Street property. (Doc. No. 43.) In addition, Defendants admitted that they could no longer pursue collection efforts in regard to this property for any pre-petition taxes incurred between 1983 and 2004. (Doc. No. 49 at 73:23-78:1.) For these reasons, Thomas's requests concerning this property are moot.[19]

---

fact that Defendants violated the discharge injunction. It also understates the need for sanctions, which are being imposed to compensate for losses sustained by Defendants' disobedience. See Meyers, 344 B.R. at 66.

[17] "[P]unitive damages are not recoverable against a municipality unless expressly authorized by statute." In re PVI Assocs., 181 B.R. 210, 217 (E.D. Pa. 1995) (citing City of Newport v. Fact Concerts Inc., 453 U.S. 247 (1981)). Plaintiff has not identified a statute that expressly authorizes punitive damages against Defendants. Therefore, punitive damages will not be awarded.

[18] Thomas also claimed that he was receiving rental income on this property, though it is unclear from the record when he rented this property and for how much it was rented. The Court, therefore, cannot sanction Defendants for any loss of rental income on the 1618 S. 58th Street property.

[19] Thomas also requested that he be given "his landlord/tenant license back." (Doc. No. 41 at 26:1-2.) Thomas was referring to a "commercial activity license," which the City issues to residents who rent their properties. (Id. at 27:1-18.) At the evidentiary hearing, the City

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion for Judgment on the Pleadings (Doc. No. 39). A sanction in the amount of $10,100 will be imposed on Defendants and will be awarded to Plaintiff based on the Complaint and the statements made by the parties at the hearings before the Court. An appropriate Order follows.

---

explained after the decision of the Third Circuit, it requested a tax clearance certificate so that Thomas could renew his rental license and perhaps his commercial activity license. (Id.) The City further explained that once the parties resolved the dispute about the two properties in this case, it would allow Thomas to renew this license. (Id.)